# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 23-1573V**
UNPUBLISHED

MICHAEL GREIM,

Petitioner,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent.

Chief Special Master Corcoran

Filed: October 5, 2026

*William E. Cochran, Jr., Black McLaren, et al., PC, Memphis, TN, for Petitioner.*

*Lauren Kells, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On September 13, 2023, Michael Greim filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that he suffered a Table Injury – a Shoulder Injury Related to Vaccine Administration ("SIRVA") – as a result of an influenza ("flu") vaccine he received on November 9, 2022. Petition at 1 (ECF No. 1). The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"). Although Respondent conceded entitlement, the parties could not agree on damages, so the disputed issues were submitted to SPU Motions Day.

[1] Because this Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons set forth below, and after holding a brief hearing in this matter, I find that Petitioner is entitled to **$148,000.00** for actual pain and suffering and **$3,208.06** for unreimbursable medical expenses, for a total award of **$151,208.06,**

## I. Procedural Overview

After the claim's initiation, Respondent filed a Rule 4(c) Report in which he conceded that Petitioner was entitled to compensation in this case. (ECF No. 18). Accordingly, on November 26, 2024, a ruling on entitlement issued in Petitioner's favor. (ECF No. 19).

The parties were subsequently unable to informally resolve the issue of damages, so a briefing schedule was set on June 10, 2025. Petitioner filed his brief (styled as a Motion for a Ruling on the Record) on June 22, 2025, requesting that I award him $160,000.00 in compensation for his pain and suffering and $3,266.39 for out-of-pocket expenses. Pet.'s Br. at 12. (ECF No. 30). Conversely, in a brief filed on October 7, 2025, Respondent argued that Petitioner should be awarded only $120,000.00 for past pain and suffering and $3,158.06. Resp. at 2 (ECF No. 32). Petitioner filed a Reply brief on October 20, 2025, reiterating his belief that $160,000.00 is an appropriate award for pain and suffering and revising his request for out-of-pocket expenses to $3,246.39. Reply at 4 (ECF No. 33).

On April 13, 2026, Petitioner filed a motion expressing his interest in participating in an upcoming Motions Day expedited damages hearing. (ECF No. 34). The staff attorney managing this case reached out to the parties via e-mail to determine the parties availability, and an expedited hearing took place on September 25, 2026. Minute Entry dated September 25, 2026.[3] I orally ruled on Petitioner's damages at that time, and this Decision memorializes my determination.

## II. Pain and Suffering

### A. Legal Standard and Prior SIRVA Pain and Suffering Awards

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks

[3] Mr. William Cochran, Jr. appeared on behalf of Petitioner, and Ms. Lauren Kells appeared on behalf of Respondent. The transcript of this was not filed as of the date of this Decision, but my oral ruling is incorporated by reference herein.

compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims. *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by a Court of Federal Claims decision several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). *Graves* maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, *Graves* assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id*. at 595. Under this approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap. Although *Graves* is not

controlling of the outcome in this case, it provides reasoned guidance in calculating pain and suffering awards – and properly emphasizes the importance in each case of basing damages on the specific injured party's circumstances.

### B. Prior SIRVA Compensation Within SPU[4]

SIRVA cases have an extensive history of informal resolution within the SPU. As of July 1, 2026, 5,790 SPU SIRVA cases have been resolved since the inception of SPU more than ten years before. Compensation has been awarded in the vast majority of cases (5,575), with the remaining 215 cases dismissed.

3,139 of the compensated SPU SIRVA cases were the result of a ruling that the petitioner was entitled to compensation (as opposed to an informal settlement), and therefore reflect full compensation as warranted by the record.[5] In only 392 of these cases, however, was the amount of damages determined by a special master in a reasoned decision or ruling.[6] As I have previously stated, the written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable guidance in deciding what similarly-situated claimants should also receive.[7]

The data for all categories of damages decisions described above reflect the expected differences in outcome, summarized as follows:

---

[4] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[5] The remaining 2,436 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Because multiple competing factors may cause the parties to settle a case (with some having little to do with the merits of an underlying claim), these awards from settled cases do not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

[6] The rest of these cases resulting in damages after concession were either reflective of a proffer by Respondent (2,710 cases) or stipulation (37 cases). Although all proposed amounts denote *some* form of agreement reached by the parties, those presented by stipulation derive more from compromise than instances in which Respondent formally acknowledges that the settlement sum itself is a fair measure of damages.

[7] Of course, even though *all* independently-settled damages issues (whether by stipulation/settlement or proffer) must still be approved by a special master, such determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits v. Sec'y of Health & Hum. Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

| | Damages Decisions by Special Master | Proffered Damages | Stipulated Damages | Stipulated[8] Agreement |
|---|---|---|---|---|
| **Total Cases** | *392* | *2,710* | *37* | *2,436* |
| **Lowest** | $25,000.00 | $4,000.00 | $37,013.60 | $1,000.00 |
| **1st Quartile** | $64,811.00 | $57,596.44 | $82,181.20 | $30,000.00 |
| **Median** | **$85,973.93** | **$76,428.29** | **$109,582.59** | **$46,000.00** |
| **3rd Quartile** | $125,007.45 | $105,000.00 | $160,000.00 | $72,000.00 |
| **Largest** | $1,569,302.82 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

### B. Pain and Suffering Awards in Reasoned Decisions

In the 392 SPU SIRVA cases in which damages were determined via reasoned decision or ruling, compensation for a petitioner's actual or past pain and suffering varied from $25,000.00 to $215,000.00, with $85,000.00 as the median amount. Only eleven of these cases involved an award for future pain and suffering, with yearly awards ranging from $250.00 to $1,500.00.[9] In one of these cases, the future pain and suffering award was limited by the statutory pain and suffering cap.[10]

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment – over six months in one case. In cases with more significant initial pain, petitioners usually experienced this greater pain for three months or less. Most petitioners displayed only mild to moderate limitations in range of motion ("ROM"), and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or less of physical therapy ("PT"). None required surgery. Except in one

[8] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

[9] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Hum. Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

[10] *Joyce v. Sec'y of Health & Hum. Servs.*, No. 20-1882V, 2024 WL 1235409, at *2 (Fed. Cl. Spec. Mstr. Feb. 20, 2024) (applying the $250,000.00 statutory cap for actual and future pain and suffering set forth in Section 15(a)(4) before reducing the future award to net present value as required by Section 15(f)(4)(A)); *see Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552, 554-55 (Fed. Cir.1994) (requiring the application of the statutory cap before any projected pain and suffering award is reduced to net present value).

case involving very mild pain levels, the duration of the SIRVA injury ranged from six to 30 months, with most petitioners averaging approximately nine months of pain. Although some petitioners asserted residual pain, the prognosis in these cases was positive.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 133 PT sessions - occasionally spanning several years, and multiple cortisone injections, were required in these cases. In nine cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering.

### C. Appropriate Compensation for Petitioner's Pain and Suffering

In this case, Petitioner's awareness of the injury is not disputed, leaving only the severity and duration of that injury to be considered. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, affidavits, filings, and all assertions made by the parties in written documents and at the expedited hearing held on September 25, 2026. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

Pursuant to my oral ruling on September 25, 2026, (which is fully adopted herein), I find that $148,000.00 represents a fair and appropriate amount of compensation for Petitioner's past pain and suffering. There are several related bases for my determination.

The record establishes that Petitioner suffered a fairly severe injury later requiring surgery. Petitioner promptly sought treatment for left shoulder pain on November 28, 2022, only 19 days after vaccination. Ex. 3 at 22. Between December 21, 2022, and September 11, 2024, Petitioner's treatment for his shoulder included one cortisone injection, two platelet-rich plasma injections, two suprascapular nerve injections, and nine PT sessions. *See, e.g.,* Ex. 3 at 14-15; Ex. 6 at 10-11; Ex. 7 at 34. However, none of these treatments provided any sort of lasting relief – Petitioner reported that his steroid injection only provide 80% relief for two days, that the PRP injections only improved his shoulder "ten percent" and that the nerve injections provided "one month" of pain relief. *Id.*

Ultimately, on December 30, 2024, Petitioner underwent surgical arthroscopy of the left shoulder with extensive debridement, subacromial decompression, and acromioplasty. Ex. 9 at 64-68. Petitioner's post-surgical treatment included nineteen additional PT sessions along with a home exercise plan. At the time he was discharged from PT, Petitioner reported intermittent pain with certain movements but it was ultimately concluded that he had "made good progress with PT program and has achieved adequate functional mobility and strength." Ex. 11 at 8.

Petitioner has demonstrated entitlement to a fairly substantial award for pain and suffering award. His treatment course lasted approximately 29 months and involved one surgery, two MRIs, five total injections, and 28 PT sessions. However, the requested amount is slightly excessive.[11]

Petitioner cites three cases in support of his request for $160,000.00: *S.C. v. Sec'y of Health & Hum. Servs.*, No. 19-341V, 2021 WL 2949763 (Fed. Cl. Spec. Mstr. June 14, 2021) (awarding $160,000.00 for actual pain and suffering); *Monson v. Sec'y of Health & Hum. Servs.,* No. 20-1350V, 2023 WL 2524059 (Fed. Cl. Spec. Mstr. Feb. 8, 2023) (awarding $155,000.00 ); and *Gao v. Sec'y of Health & Hum. Servs.,* No. 21-1884V, 2023 WL 6182455 (Fed. Cl. Spec. Mstr. Aug. 18, 2023) (awarding $155,000.00).

These cases, however, present injuries more serious than the one sustained by Mr. Greim. For example, the *S.C.* petitioner reported similar pain levels to Mr. Greim and had four injections, but he also had 95 total PT sessions, including 65 post-surgery indicating a far more arduous recovery process than Mr. Greim fortunately avoided. *S.C. v. Sec'y of Health & Hum. Servs.*, 2021 Wl 2949763, at *4. That petitioner also had a treatment course of 38 months (which included an approximately 21 month period where the petitioner was only self-treating with home exercises). *Id.* And the *Monson* petitioner's treatment course lasted approximately 48 months, and underwent 42 PT sessions along with four injections and two MRIs. *Monson v. Sec'y of Health & Hum. Servs.*, 2023 WL 2524059, at *6.

*Gao* presents a closer call. That petitioner underwent a shorter overall course of treatment at 21 months, although she also had more overall treatment, with four injections and 64 PT sessions. *Gao v. Sec'y of Health & Hum. Servs.*, 2023 WL 6182455, at * 5. This, plus the fact that petitioner in *Gao* was still following up with her orthopedist with

[11] I acknowledge that prior pain and suffering determinations are not binding on this decision. *See Nance v. Sec'y of Health & Human Servs.*, No. 06–730V, 2010 WL 3291896 at *8 (Fed. Cl. Spec. Mstr. July 30, 2010); *Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 625, 630 (1998) ("Special masters are neither bound by their own decisions nor by cases from the Court of Federal Claims, except, of course, in the same case on remand."). These cases, however, provide persuasive guidance herein.

complaints of mild pain and reduced ROM several months post-surgery, suggests that case involved a somewhat more serious injury than the one sustained by Mr. Greim.

Respondent has offered one case as a counter-comparable - *Wilson-Blount v. Sec'y of Health & Hum. Servs.*, No. 21-1400V, 2023 WL 5528930 (Fed. Cl. Spec. Mstr. July 25, 2023). The *Wilson-Blount* petitioner underwent three cortisone injections and 25 PT sessions over a 13 month course of treatment. *Id.* at *10. However, in addition to less overall treatment over a much shorter treatment course, that petitioner also was diagnosed with a SLAP tear during her surgery, which I noted was not an injury that could be deemed the consequence of the SIRVA itself. *Id.*

Overall, Petitioner's Petitioner's proposed award is closer to what I deem an appropriate sum, but is a bit high. Thus, taking all of the foregoing into account, a reasonable award for Petitioner's pain and suffering is $148,000.00.

### D. Appropriate Compensation for Petitioner's Past Unreimbursable Expenses

In his brief, Petitioner requests $3,266.39 as reimbursement for unreimbursable out-of-pocket expenses. Respondent contended that the appropriate number was $3,158.06, and Petitioner countered with $3,246.39. Because the parties were unable to agree upon an amount, following the Motions Day hearing the parties were ordered to file a joint status report proposing an agreed upon amount for Petitioner's expenses. On October 1, 2026, the parties filed the joint status report and proposed $3,208.06 as an appropriate amount for Petitioner's expenses. (ECF No. 36). That amount shall be fully awarded to Petitioner.

## Conclusion

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $151,208.06, representing $148,000.00 in reimbursement for actual pain and suffering and $3,208.06 in reimbursement for past out-of-pocket expenses.** This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[12]

[12] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master